FILED

2015 Jul-01  PM 03:21
U.S. DISTRICT COURT
N.D. OF ALABAMA



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| TEREK ANTONE-HERRON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | 7:15-cv-08007-LSC |
| | ) | (7:13-cr-00202-LSC-HGD-1) |
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OF OPINION

## I.    INTRODUCTION

This is a motion to vacate, set aside, or correct a sentence pursuant to 28 U.S.C. § 2255, filed by petitioner Terek Antone-Herron ("Antone-Herron") on February 6, 2015. (Doc. 1.) The Petitioner contemporaneously filed a brief in support of said motion. (Doc. 2.) Antone-Herron pled guilty in this Court to possession of a firearm as a convicted felon in violation of 18 U.S.C. § 922(g)(1). He was sentenced to a term of imprisonment for 71 months and now challenges his sentence. For the reasons set forth below, this motion is due to be denied.

## II.    BACKGROUND

In the early hours of December 15, 2012, a shooting took place in the parking lot of a Mapco service station in Tuscaloosa, Alabama. Shortly thereafter, officers from the Tuscaloosa Sherriff's Office arrived at the scene. With the help of witnesses and video surveillance, the officers were able to identify Antone-Herron as a person of interest. It was believed that he had been driving the vehicle involved in the shooting and had given a gun to one of the shooters.

Using police records, the officers located the last known address used by Antone-Herron. Later that same morning, Sergeant Dale Phillips, Investigator Timothy Elmore, and another deputy arrived at a mobile home where Antone-Herron was believed to reside. Parked in front of the home was a Dodge Charger which appeared to match the one captured by the surveillance video. The car was riddled with bullet holes, presumably from the morning's earlier escapades.

The officers approached the home and knocked on the door. Lakendrix May, a friend of Antone-Herron, answered. May explained that he had been asleep in a back room where he stayed and did not know if Antone-Herron was home. When asked by the officers if they could take a look

around and see if Antone-Herron was present, May responded that they could do what they had to do.

Upon entering the trailer, the officers discovered Antone-Herron asleep on the couch. They woke him, noticed a TAC revolver on the couch where he slept, and placed him under arrest. Following the arrest, Antone-Herron was interviewed by the officers. He directed them to the location of the Glock .45-caliber pistol used in the shooting which was hidden in the home beneath a freezer.

On May 30, 2013, a federal grand jury indicted Antone-Herron on two counts of possession of a firearm by a convicted felon—Count I for possessing the Glock pistol and Count II for possessing the TAC revolver. On August 30, Antone-Herron's appointed attorney, Assistant Federal Defender Rick Burgess, filed a motion to suppress the guns and post-arrest statements, arguing that the search was unlawful because the officers had neither a warrant nor proper consent to enter the home. On September 18, a suppression hearing was held before the Honorable Harwell G. Davis, United States Magistrate Judge, who recommended the motion be granted in part and denied in part. The Glock pistol was suppressed because the officers' search underneath the freezer exceeded the scope of May's

consent, which was limited to searching the home for Antone-Herron. This Court accepted the Report and Recommendation of the magistrate judge over the objections of the Defendant. On October 2, 2013, Antone-Herron pled guilty to just Count II of the indictment—possession of the TAC revolver. However, in the plea agreement, Antone-Herron reserved the right to appeal the partial denial of his motion to suppress. On February 19, 2014, Antone-Herron was sentenced by this Court to 71 months in prison on Count II, and Count I was dismissed due to the Court's acceptance of the magistrate judge's report and recommendation. Judgment was entered the same day.

Following sentencing and judgment, Antone-Herron exercised his reserved right to appeal and asked the Eleventh Circuit to reverse the partial denial of the motion to suppress. Specifically, his counsel argued: (1) that May did not give voluntary consent and instead merely acquiesced to a show of official authority; and (2) that May lacked the authority to consent, and the officers could not have reasonably believed otherwise. The Eleventh Circuit rejected these arguments and affirmed the conviction on January 8, 2015.

On February 6, 2015, Antone-Herron delivered to prison officials for mailing the instant *pro se* § 2255 motion in this Court, asserting two grounds in support of relief:

1. Ineffective assistance of counsel which caused his "guilty plea to be unknowing and involuntarily given [because] counsel failed to reasonably and adequately familiarize himself with the law and facts of the prosecution's case"; and

2. Ineffective assistance of counsel "due to counsel's failure to reasonably and timely note, object and raise his client's claim that law enforcement['s] initial conduct and actions were illegal at its inception and made the alleged consent, search, and seizure(s) and arrest the tainted fruit of the po[i]sonous tree doctrine."

(Doc. 2 at 1-3.)

## III.   DISCUSSION

### A. Timeliness and Non-Successive Nature of Antone-Herron's § 2255 Motion

Because Antone-Herron filed his § 2255 motion within one year of the date that the judgment of his conviction became final, his motion is timely. *See* 28 U.S.C. § 2255(f)(1). Furthermore, nothing in the record indicates that the Petitioner has previously filed a § 2255 motion. Thus, the current motion is not "successive" within the meaning of § 2255(h).

### B. Effect of Antone-Herron's Plea Agreement

Antone-Herron waived certain rights when he entered into his guily pleas, but he did not waive the right to raise a claim of ineffective assistance of counsel. (Cr. Doc. 25 at 6.)[1] Both grounds for relief asserted in the § 2255 motion are ineffective assistance of counsel claims which are not barred by the plea agreement.

### C. Antone-Herron's Claim of Ineffective Assistance of Counsel as Related to His Decision to Plead Guilty

Claims of ineffective assistance of counsel may be raised for the first time in a § 2255 motion and are therefore not subject to a procedural bar if the petitioner did not raise the issue on direct appeal. *Massaro v. United States*, 538 U.S. 500, 504 (2003). In order for a convicted defendant's claim of ineffective assistance of counsel to warrant post-conviction relief, two components must be present—deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To demonstrate deficient performance, the defendant must show that counsel's representation fell below an objective standard of reasonableness. *Id.* at 688. To demonstrate prejudice, the defendant must show that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* at 694. The court need not "address both

---

[1] "Cr. Doc." Refers to an entry on the docket sheet in the underlying criminal case, No. 7:13-cr-202-LSC-HGD-1.

components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. This two-part test is equally applicable to ineffective assistance claims arising out of the plea process. *Hill v. Lockhart*, 474 U.S. 52, 57 (1985). In regard to guilty pleas, the prejudice element is satisfied when the defendant shows "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59.

Turning to the instant motion, Antone-Herron argues that his attorney's ineffective assistance "caused him . . . to enter a guilty plea that was both involuntarily and unknowingly made." He provides a three-step argument for why this is the case: his attorney failed to challenge the officers' search as unconstitutional; this failure is evidence that his attorney was so unfamiliar with the facts of the case that any advice he provided to Antone-Herron regarding the guilty plea was necessarily inadequate; and it was because of this inadequate advice that Antone-Herron pleaded guilty.

As an initial matter, the majority of Antone-Herron's argument in support of his motion is contained in an addendum to his brief styled "Defendant's Pro Se Motion to Withdraw Guilty Plea." (Doc. 2 at 5-17). It appears from the face of this motion that he sent this motion to his counsel

on January 30, 2014. It also appears that, based on statements Anton-Herron makes in his current motion, Antone-Herron believes the motion to withdraw the guilty pleas is before the Court, and has been since January 30, 2014. (*See* Doc. 1 at 2.) This is incorrect: Antone-Herron's motion to withdraw his guilty plea was never filed with this Court. The relevant timeline is this: on October 2, 2013, Antone-Herron entered his plea of guilty before this Court; on January 30, 2014, he purportedly sent his motion to withdraw his guilty plea to his counsel; and on February 19, 2014, this Court held a sentencing hearing and then entered judgment. At the sentencing hearing, Antone-Herron never made mention of any motion (or any intent) to withdraw his guilty plea. Instead, he chose to acknowledge his mistakes ("I would just like to say I know I made mistakes") and ask for leniency (I am "hoping that I get another chance just to prove myself to my family"). (Doc. 40 at 4–5.) Nor did he make any mention of any intent to proceed *pro se*. (*Id.*) Indeed, on March 4, 2014, when he filed his notice of appeal, he was still represented by counsel, and that representation continued throughout the appeals process before the Eleventh Circuit. (Doc. 34.)

Pursuant to Federal Rule of Criminal Procedure 11(e), a defendant may not withdraw a guilty plea after the court imposes sentence. Thus,

because Antone-Herron's *pro se* motion to withdraw his guilty plea was never filed with this Court prior to his sentencing, it cannot be considered now. However, a guilty plea may still be set aside on direct appeal or collateral attack. *See* Fed. R. Crim. P. 11(e). As such, insofar as Antone-Herron seeks to set aside his guilty plea through the constitutional claims he presents in the instant § 2255 proceeding, that request is considered here.

### 1. Antone-Herron failed to show deficient performance by his counsel.

In determining whether an attorney's performance fell below the objective standard of reasonableness, the court is highly deferential to counsel's decisions and must keep in mind that "a fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged performance, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. The court must also indulge a strong presumption that counsel's performance falls within the "wide range of reasonable professional assistance." *Id.* When seeking to overcome this presumption, a movant cannot rely on bare accusations and complaints but instead "must identify the acts or omissions of counsel that

are alleged not to have been the result of reasonable professional judgment."
*Id*. at 690.

Here, Antone-Herron alleges in his brief that Attorney Rick Burgess did not live up to his professional responsibilities because he neglected to familiarize himself with the facts of the case and the applicable law. As evidence of this unfamiliarity, Antone-Herron makes three principal allegations. First, he describes his attorney's "complete failure" to challenge the constitutionality of the officers' initial search and to reasonably pursue this line of defense. (Doc. 2 at 2.) Second, he alleges that his attorney failed to utilize the testimony of Lakendrix May to refute that the officers received legally sufficient consent to enter the home. (*Id.* at 8-9.) Finally, Antone-Herron states that his counsel failed to discover important case precedent that would have favorably affected the outcome of his case. However, all of these assertions are refuted by the record.

Antone-Herron's attorney did in fact investigate and raise these particular constitutional defenses on more than one occasion. First, Attorney Burgess filed a motion to suppress the evidence and post-arrest statements, contending that law enforcement violated his client's Fourth and Fifth Amendment protections by conducting an unlawful search and seizure. (Cr.

Doc. 12.) He specifically argued that officers were not permitted to enter the residence without a warrant or his client's consent and that the exclusionary rule should apply to any evidence obtained as a result of the unlawful entry. (*Id.* at 3.) At the motion hearing, Attorney Burgess made use of this defense to successfully advocate for exclusion of the Glock pistol, leading to Count I of the indictment being dismissed.

Following the suppression hearing, Attorney Burgess raised the issue of illegal entry and consent a second time in a motion titled "Objections to Magistrate's Report and Recommendation." (Cr. Doc. 21.) The motion argued that law enforcement lacked legally sufficient consent to enter the home because May had simply yielded to a show of official authority, and the State had failed to carry its burden of proving that consent was freely and voluntarily given. (*Id.* at 2.)

Finally, to ensure that these matters could be considered once again, the plea agreement that Antone-Herron negotiated while represented by Attorney Burgess expressly reserved the right to appeal the suppression issue. (Cr. Doc. 6-3 at 17.) A timely notice of appeal was filed to challenge the issues of entry and consent while Antone-Herron was still represented by his attorney. (Cr. Doc. 34.)

As further evidence of his counsel's alleged deficient performance, Antone-Herron argues that Attorney Burgess failed to make use of crucial testimony by neglecting "to fully investigate Mr. Lakendrix May's unrefuted statement that he actually did not provide consent to enter." (Doc. 2 at 8-9.) This testimony, which serves as the principal basis for much of the present motion, is contained in Lakendrix May's affidavit, which was signed by May on December 13, 2014, and was submitted by Antone-Herron along with his brief. (Doc. 2 at 19-20.) However, the allegation that Attorney Burgess ignored this testimony once again conflicts with the record.

To begin with, Attorney Burgess did in fact call May as a witness at the suppression hearing where the magistrate judge heard his testimony regarding the events leading to Antone-Herron's arrest. Additionally, contrary to the claim in the Petitioner's brief, May's testimony was not "unrefuted." The key factual assertions made by May in the new affidavit were directly contradicted by the testimony of the two officers who appeared before the magistrate judge and by May's own testimony at that hearing. In the affidavit, May states that the officers threatened him with arrest if he did not allow them entry. (Doc. 2 at 19.) However, at the suppression hearing, May was asked more than once during direct and cross examination whether

the officers said or did anything threatening or intimidating toward him, to which he answered no. (Doc. 6-2 at 46; 50.) Additionally, May's affidavit states that he unequivocally told officers that he did not live at the residence and could not authorize entry. (Doc. 2 at 19.) Yet at the hearing, the officers testified that May had held himself out to be a resident, saying that he stayed at the home and had a room in the back. (Doc. 6-2 at 9-10; 31.) May himself testified that when asked by the officer whether he stayed at the home, he answered, "I told him, yes, sir, I do stay there." (*Id.* at 45.) Lastly, May's affidavit states that he never gave law enforcement officials consent to enter the home. (Doc. 2 at 20.) But this claim was also contradicted at the hearing, as both officers testified that May granted them entry into the residence. (Doc. 6-2 at 10; 30.) Furthermore, May also testified that when officers asked for his consent to enter the house, he did not deny them entry. Instead, he responded, "I stay here, I am not the owner of the house . . . do what y'all have to do." (*Id.* at 47.) All of this testimony was given before the magistrate judge who evaluated it in light of any conflicting evidence and reached the conclusion that May had given the officers consent to enter the home. (Cr. Doc. 17 at 7). This finding was affirmed by the Eleventh Circuit on appeal.

Finally, Antone-Herron argues that his counsel overlooked key legal authority that would have benefitted his case. (Doc. 2 at 13.) In particular, he states in his brief that "Attorney Burgess incompetently failed to discover *Nap[u]e v. Illinois*, 360 U.S. 264 (1959) and the favorable impact that such authority would have on the case of the prosecution." (*Id.*) According to the Antone-Herron, *Napue* mandates the exclusion of all law enforcement officials' testimony from the prosecution's case-in-chief. (*Id.* at 14.)   Had Attorney Burgess discovered and raised this argument, Anton-Herron asserts that it would have resulted in the indictment being dismissed. (*Id.*)

In *Napue*, the Petitioner was convicted of murder following a botched robbery.   The principal witness for the prosecution was one of the Petitioner's co-conspirators in the robbery. When asked at trial whether he had received any consideration in return for his cooperation, the witness testified that he had not. The prosecuting attorney, despite knowing that he had promised the witness a reduction in his sentence if he testified, failed to correct the witness's false statement. The question the Supreme Court was asked to address was whether "the failure of the prosecutor to correct the testimony of the witness which he *knew to be false* denied petitioner due process of law in violation of the Fourteenth Amendment to the Constitution

of the United States." *Napue*, 360 U.S. at 265 (emphasis added). The Court

held that false testimony could not be used to secure a conviction at trial. *Id.*

at 272.

Antone-Herron's reliance on this decision is misplaced. In *Napue*, the

record established that the prosecuting attorney had promised the witness

consideration for his testimony, a finding that the State did not contest. In

fact, the state's attorney testified himself that he had offered to help the

witness if he cooperated. Thus, the testimony used to achieve the conviction

was without a doubt false, and the prosecutor had actual knowledge of this

fact. In the present case, *Napue* would be relevant only if the testimony

offered by the State's witnesses was in fact fabricated. However, the sole

support for this proposition is the unconvincing affidavit of Lakendrix May.

For the reasons already discussed, this evidence does not persuade the Court

that there is cause to call into question the veracity of the officers' testimony

or to reconsider the Court's previously established findings.

It is therefore clear from the record that Attorney Burgess pursued the

existing lines of defense, utilized the available testimony, and invoked

appropriate legal authority to advocate effectively on behalf of his client. In

acknowledgement of his attorney's efforts, Antone-Herron averred at his

plea colloquy that his counsel did good work and that he had no complaints about the representation he received. (Doc. 6-3 at 4.) Nothing in Antone-Herron's brief provides a sufficient basis for upsetting this conclusion now. *See Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989) (a district court is not required to hold an evidentiary hearing on a petitioner's § 2255 claims when the petitioner's allegations are affirmatively contradicted by the record).

### 2. Antone-Herron fails to show that counsel's performance affected the outcome of the case.

A guilty plea that is induced by promises or threats which deprive it of its voluntary character is void. *Machibroda v. United States*, 368 U.S. 487, 493 (1962). At the same time, plea bargaining retains its benefits of certainty and efficiency "only if dispositions by guilty plea are accorded a great measure of finality." *Blackledge v. Allison*, 431 U.S. 63, 71 (1977). "[T]he representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." *Id.* at 73–74. There is "a 'strong presumption' that statements made by the defendant during his plea colloquy are true." *United States v. Cardenas*, 230 F. App'x 933, 935 (11th Cir. 2007) (citing *United States v. Medlock*, 12 F.3d

185, 187 (11th Cir. 1994)). "[T]herefore, 'when a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false.'" *Id.* (quoting *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir.1988)). For that reason, '[t]he subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge*, 431 U.S. at 74.

Assuming *arguendo* that Attorney Burgess's representation fell below professional standards, Antone-Herron nevertheless fails to establish that there is a reasonable probability that the performance of his counsel affected the outcome of his case. He alleges that it was "Attorney Burgess's acts and omissions that caused the challenged guilty plea to be [made] involuntarily," (Doc. 2 at 15) that "Attorney Burgess persisted that [he] plead guilty," (*Id.* at 7) and that "[entering] such a plea was apparently not the results of a reasonable and well informed decision on his part." (*Id.* at 6.) However, these are mere "conclusory allegations" which Antone-Herron fails to substantiate with particular facts or evidence. What is more, these allegations are directly contradicted by Antone-Herron's own prior testimony.

At his plea hearing, Antone-Herron was placed under oath before being questioned by this Court. After being sworn in, he was asked at length about his understanding of the plea deal, whether it was his own decision to enter the plea, and whether he had been somehow induced to plead guilty. According to Antone-Herron's testimony, he read the plea agreement himself and had his attorney go over it with him (Doc. 6-3 at 5.) The plea was signed and initialed on each page, and Antone-Herron confirmed the authenticity of the signature. (*Id.* at 5.) He also swore he understood the charges against him and the rights he was giving up by pleading guilty, including the right to be presumed innocent, the right to a trial by jury, the right to confront witnesses, and the right to call witnesses to testify on his behalf. (*Id.* at 7-10.) The Court questioned whether Antone-Herron understood the burden the government would have to carry to prove him guilty of the particular offense. (*Id.* at 11.) In response to all the Court's inquiries, Antone-Herron repeatedly affirmed that he understood the nature and consequences of the plea agreement and that it was his desire to plead guilty. Most significantly to this action, the Court questioned Antone-Herron explicitly about the voluntariness of his plea.

| | |
|---|---|
| THE COURT: | All right. Has anybody threatened you, forced you, or coerced you in any way to get you to plead guilty? |
| THE DEFENDANT: | No, sir. |
| THE COURT: | Are you wanting to plead guilty because you are, in fact, guilty? |
| THE DEFENDANT: | Yes, sir. |

(*Id.* at 17-18.)

Based upon Antone-Herron's own sworn testimony, this Court found that he was fully competent and capable of entering an informed plea, that he was aware of the nature of the charge and the consequences of entering the plea, and that the plea of guilty was knowing and voluntary. (*Id.* at 19.) Antone-Herron has made no effort to explain why his plea hearing testimony should now be deemed false, and no facts contained within his brief suffice to undermine this Court's prior finding that the plea was valid.

## IV. CONCLUSION

Since the Petitioner has failed to show that his counsel's representation fell below an objective standard of reasonableness and has failed to demonstrate a reasonable probability that counsel's performance affected the outcome of the case, there is no basis for granting relief for ineffective assistance of counsel. For this reason, Antone-Herron's § 2255

motion is due to be denied and this action dismissed with prejudice. A separate order will be entered consistent with this opinion.

DONE and ORDERED on July 1, 2015.

_____
L. Scott Coogler
United States District Judge

160704